UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

UNITED STATES OF AMERICA

V.                                                          CRIMINAL NO. 4:18-CR-104-DMB-JMV

JOE CRAWFORD

ORDER

There are four pending motions in this criminal case, two of which this Order resolves. Defendant Joe Crawford has moved to suppress contraband found in his home pursuant to a search warrant. *See* Def.'s Mot. to Suppress [148]. That motion is set for hearing on February 21, 2020, and has generated three peripheral motions. First, Crawford seeks to disqualify the entire United States Attorney's Office for the Northern District of Mississippi. *See* Def.'s Mot. to Disqualify [162]. Second, the Government seeks an order quashing the subpoenas Crawford issued for the suppression hearing. *See* Gov't's Mot. [166]. Third, Crawford seeks more time to respond to the motion to quash. *See* Def.'s Mot. for Time [167]. For the following reasons, Crawford's motion for disqualification is granted in part but otherwise denied; the Government's motion to quash is held in abeyance; and Crawford's motion for an extension of time is denied as moot because he has filed his memorandum.

I.    Background

On August 24, 2018, United Sates Magistrate Judge Roy Percy signed a search warrant allowing a daytime search of Crawford's home. Two days later, FBI Special Agent Dustin Blount concluded that the warrant needed modification. In addition to fixing a clerical mistake, he wanted permission to conduct the search before 6:00 a.m. Those changes would require judicial approval, so he apparently spoke with Assistant United States Attorney Robert Norman,

who facilitated a telephone call between Agent Blount and United States Magistrate Judge David Sanders. Judge Sanders agreed to modify the warrant and signed an amended version on August 27, 2018. The search occurred on August 28, 2018, during which the agents found illegal firearms in Crawford's residence.

Crawford now contends that the modifications violated Federal Rules of Criminal Procedure 4.1 and 41 and that Judge Sanders lacked authority to modify the warrant Judge Percy signed. He therefore says the seized firearms should be suppressed. Because his motion questions Judge Sanders' actions, United States District Court Judge Debra Brown referred the motion to the undersigned for handling. *See* Dec. 12, 2019 Order [160].

II. Analysis

    A. Motion to Disqualify

The first motion asks whether AUSA Norman's potential testimony at the suppression hearing violates the advocate-witness rule. That rule generally states that "counsel should avoid appearing as both advocate and witness except under extraordinary circumstances." *United States v. Hosford*, 782 F.2d 936, 938 (11th Cir. 1986) (citing *United States v. Crockett*, 506 F.2d 759, 760 (5th Cir.), *cert. denied*, 423 U.S. 824 (1975)).

Norman serves as Chief of the Criminal Division in the Northern District, and it appears that he placed the call to Judge Sanders and remained on the line while Agent Blount requested the modifications. Gov't's Resp. [163] at 3. If there is a dispute regarding that conversation, Norman would likely possess personal knowledge and could be a witness.

Although Norman is not prosecuting this case, Crawford says his potential testimony is problematic because Norman supervises the AUSAs who are. Def.'s Mot. to Disqualify [162] at 3. Crawford also observes that Norman "attended" a meeting during which defense counsel

conducted a recorded interview with Judge Sanders. Def.'s Mot. to Disqualify [162] at 7–8. As relief, Crawford seeks the disqualification of the entire United States Attorney's Office for the Northern District of Mississippi. He alternatively seeks to exclude Norman's testimony and prevent Norman from participating in the case.

As an initial point, the Government says there is no need to call Norman as a witness, so that portion of Crawford's motion is granted. As for disqualification, Crawford has not shown that Norman's knowledge regarding the warrant should disqualify him from holding the supervisory role he plays in the United States Attorney's Office. Unless Crawford decides to call Norman, there will be no testimony and therefore no conflict with the advocate-witness rule.

Even if he does testify, it would not disqualify him from *supervising* the prosecution team. "It is clear that a prosecutor must not act as both prosecutor and witness." *Hosford*, 782 F.2d at 938 (citing *United States v. Johnston*, 690 F.2d 638, 642–43 (7th Cir. 1982)). That same principal is found in Rule 3.7 of the Mississippi Rules of Professional Conduct, which Crawford invokes in his motion. That rule states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Miss. R. Prof'l Conduct 3.7.

Simply put, Norman has not—and will not—"act as advocate *at a trial*." *Id.* According to the Government, Norman "was not responsible for the preparation of this case, is not handling the prosecution of the case, and will not be presenting the case at trial." Gov't's Resp. [163] at 8. Indeed, he has never made an appearance as counsel of record, and even Crawford acknowledges that Norman "is not involved in this case *per se*." Def.'s Mot. to Disqualify [162] at 7–8. While the rules against advocate witnesses apply to prosecutors, Norman is not prosecuting this case; supervising the prosecution team behind the scenes is not the same as advocating "at trial." Miss. R. Prof'l Conduct 3.7.

In addition, even assuming he testifies, it will not occur "*at a trial*." *Id.* (emphasis added). At most, he might testify at a preliminary hearing; there is a difference. *See Johnston*, 690 F.2d at 645. If Norman testifies at this preliminary hearing, the undersigned is the only judge that will hear it. The case itself will be tried by the Honorable Debra Brown after the suppression issue is resolved. Thus, given his limited role—supervisor to the prosecutors—Norman will never be seen or heard by the presiding judge or the jury. *See id.* (noting that preliminary testimony might cause conflicts but that they can be minimized when, for example, the court "rule[s] on the suppression motion and then reassign[s] the case to another judge for trial"). There is no basis to disqualify Norman from his supervisory role even if he testifies.

Turning to the motion to disqualify the entire United States Attorney's Office for the Northern District of Mississippi, Rule 3.7(b) again counsels against it. The rule states: "A lawyer *may* act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Miss. R. Prof'l Conduct 3.7(b) (emphasis added). Rule 1.7 deals with conflicts of interest among different clients, and Rule 1.9 addresses conflicts with former clients. Neither exception applies here.

4

More generally, "[a]ttorney disqualification, particularly the disqualification of an entire office, is a sanction that must not be imposed cavalierly." *In re Harris Cty.*, 240 F. App'x 644, 646 (5th Cir. 2007) (brackets deleted) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1316 (5th Cir. 1995)). In *Harris County*, the Fifth Circuit reversed the trial court's decision to disqualify an entire district attorney's office, noting that the trial court made "no findings of impropriety as to the rest of the office." *Id.* (citing *United States v. Bolden*, 353 F.3d 870, 879 (10th Cir. 2003)).

The *Bolden* case upon which the Fifth Circuit relied is frequently cited and informative. There, the Tenth Circuit noted:

> [B]ecause disqualifying government attorneys implicates separation of powers issues, the generally accepted remedy is to disqualify "a specific Assistant United States Attorney . . . , not all the attorneys in" the office. *Crocker*[ *v. Durkin*], 159 F. Supp. 2d [1258,] 1284 [(D. Kan. 2001)]. In light of these principles, every circuit court that has considered the disqualification of an entire United States Attorney's office has reversed the disqualification. *See* [*United States v.*] *Whittaker*, 268 F.3d 185 (3d Cir. 2001); [*United States v.*] *Vlahos*, 33 F.3d 758 (7th Cir. 1994); [*United States v.*] *Caggiano*, 660 F.2d 184 (6th Cir. 1981).

*Bolden*, 353 F.3d at 879. The court then reversed the trial court's disqualification of an entire United States Attorney's Office, noting:

> In reaching this conclusion, we are strongly influenced by the fact that we can only rarely—if ever—imagine a scenario in which a district court could properly disqualify an entire United States Attorney's office. Indeed, "[t]he disqualification of Government counsel is a drastic measure[,]" *Bullock v. Carver*, 910 F. Supp. 551, 559 (D. Utah 1995) (citing cases), and even "where it is shown that an Assistant United States Attorney is subject to a conflict of interest, the proper remedy [generally] is to remove that individual, not all of the attorneys in the district, from the case[,]" *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1284–85 (D. Kan. 2001). Thus, because disqualifying an entire United States Attorney's office is almost always reversible error regardless of the underlying merits of the case, a reviewing court will rarely have to delve into the underlying claim to conclude that the disqualification was unwarranted.

*Id.* at 875–76. In this case, Norman himself is not disqualified from continuing his current role, and Crawford has offered no facts suggesting improprieties by the entire office. This portion of the motion is denied.[1]

    B.    Motion to Quash

The Government has moved to quash the subpoenas Crawford served on Judges Percy and Sanders. Both parties agree that the scope of any testimony they could offer would be limited. Crawford could not, for example, ask the judges for their mental impressions or anything related to their decisions. *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 422 (1941). Recognizing those limitations, Crawford succinctly summarizes why he wants to examine Judges Percy and Sanders, stating that "[t]he facts are\was that Judge Percy was available and whether . . . Judge Sanders obeyed the rules concerning telephonic search warrants." Def.'s Resp. to Mot. to Quash [168] at 9; *see also id.* at 11 ("We seek only facts, i.e.[,] was Judge Percy available and did Judge Sanders follow the rules.").

It is not apparent that testimony from Judges Percy and Sanders would be necessary. For example, the only question Crawford wants to ask Judge Percy is whether he was available the

---

[1] Crawford attempts to manufacture widespread impropriety by observing that the Government's briefs provide factual assertions. According to Crawford, each AUSA who has drafted a brief with proffered facts must be called as a witness. *See* Def.'s Reply [165] at 4. And this, he asserts, provides "[m]uch reason . . . to disqualify the entire United States Attorney's office!!!!" Def.'s Resp. to Mot. to Quash [168] at 5. It doesn't. Both parties have proffered facts regarding the modified warrant and have likewise chronicled the strained communications among counsel. There is no indication that the AUSAs who briefed the issues participated in the disputed call between Special Agent Blount and Judge Sanders. As for statements regarding the ongoing squabbling, none of that is relevant, but if the AUSAs must testify and face disqualification, then so must defense counsel. They were equal participants in that history and spent almost four pages discussing it. *See id.* at 6–9. Of course, that is not how this works. The Court can always ask counsel—as officers of the court—to explain the procedural history if it becomes necessary. The Government's recitation of expected facts is no more a basis to disqualify the United States Attorney's Office than it would justify disqualifying defense counsel who responded based on his or her personal knowledge.

6

night the modification occurred. Def.'s Resp. to Mot. to Quash [168] at 9. Yet the Government's position as to the suppression issue does not turn on Judge Percy's actual availability. *See* Gov't's Reply [169] at 6. And both parties acknowledge that Judge Percy voluntarily answered this question in a transcribed interview. *See id.* at 6 n.3 ("[T]he United States concedes that [Judge Percy] stated that he had his cell phone with him and would have answered a call from the Government."); Def.'s Resp. to Mot. to Quash [168] at 6 ("As Judge Percy stated in the interview, he had telephone availability and was in Oxford.").

As for Judge Sanders, Crawford lists eight questions he would like to ask. *See* Def.'s Resp. to Mot. to Quash [168] at 3. The first, "[w]hether there was any evidence presented to him showing what 'good cause' existed to change the search warrant and explicitly what such evidence was," *id.*, is clearly out of bounds. *See Morgan*, 313 U.S. at 422. But the answers to the rest should be apparent from the record. For example, the Government concedes that no recording was made during the disputed telephone call, and none was docketed. It seems that this record speaks for itself as to whether Rule 4.1 was strictly followed.[2]

Having said all that, neither magistrate judge has objected to the subpoenas, and both work in the building where the hearing will be held. Accordingly, the "Government has no objection to the Court holding the Motion to Quash in abeyance until the Court hears the testimony of Agent Blount and is presented with the search warrant documents." Gov't's Reply

---

[2] Perhaps there is more to this than meets the eye, but the Court wonders why the parties have failed to reasonably agree to admit the transcribed responses. Everyone was present when they were taken, and there seems to be no dispute about what was said. Plus, the Government's arguments essentially concede the factual points Crawford wants to establish. To the extent the recorded statements are hearsay, "hearsay is admissible at a suppression hearing." *United States v. Escalon*, 744 F. App'x 238, 239 (5th Cir. 2018) (citing *United States v. Matlock*, 415 U.S. 164, 175 (1974)). The judges' time is valuable, and this seems like a waste of it. The parties are therefore instructed to again confer in the hope that they will agree to submit the recorded statements. They shall report back to the Court no later than noon on February 20, 2020.

7

[169] at 4. That is perhaps the more prudent course, so the Court will hold this motion in abeyance.

III.     Conclusion

The Court has considered all arguments. Those not addressed would not have changed the results. Accordingly, Defendant's Motion to Disqualify [162] is granted in part but otherwise denied; the Government's Motion to Quash [166] is held in abeyance; and Defendant's Motion for an Extension of Time [167] is denied as moot. Finally, the parties shall notify the Court no later than noon on February 20, 2020, whether they agree to submit the recorded transcripts.

**SO ORDERED AND ADJUDGED** this the 19th day of February, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE