# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  NO. 4:18-CR-104

JOE CRAWFORD

## ORDER

A jury found Joe Crawford guilty of two counts of selling firearms to a felon. One day after the jury verdict, a petition was filed to revoke the bond under which Crawford secured pretrial release shortly after his arrest. The petition is based, in part, on an allegation that Crawford violated a condition of his release by selling a firearm to someone other than a federal firearms licensee. Because Crawford violated a condition of his release and has failed to show by clear and convincing evidence that he is not a danger to persons or the community, the petition will be granted.

## I
## Procedural History

On August 23, 2018, Joe Crawford was charged by indictment with three counts of selling a firearm to a felon. Doc. #1. Eight days later, Crawford was released on a $10,000 secured bond. Doc. #12. Crawford's release was subject to numerous conditions, including that he not possess any firearms or other weapons. *Id*. at 2. Additionally, Crawford's appearance bond includes his agreement "to follow every order of this court." Doc. #8.

On October 5, 2018, Michael Carr, Crawford's then counsel, filed a "Motion to Allow Sale of Certain Assets." Doc. #22. The motion asked that Crawford

> be allowed to sell some or all of [his firearms and knives], by and through his wife, Debbie Crawford – or any other individual authorized by this Court - in order to raise capital to continue to run his business, pay his mortgage and living expenses, as well as pay for defense of the instant matter.

*Id*. at ¶ 7. The same day, the government requested a hearing on the motion "to clarify its position and provide the court with all the necessary and relevant facts." Doc. #23 at 2.

United States Magistrate Judge Jane M. Virden conducted a hearing on the motion on November 2, 2018. *See* Doc. #30. Crawford and his wife both attended the hearing. At the hearing, the government conceded that none of Crawford's conditions of release prohibited him from selling his weapons so long as he did not take possession of such items. However, Carr stated that he was seeking leave out of an abundance of caution to avoid the government seeking to revoke Crawford's release. Carr further stated that the best option would be to authorize Crawford's wife, through a power of attorney, to sell the various weapons. In response, the government proposed limiting the sales to a federal firearms licensee ("FFL"). Carr responded that the FFL suggestion was "not a bad idea" and that there was no objection from the defendant in that regard. At the conclusion of the hearing, Judge Virden announced that while the current conditions of release did not prohibit the transfer of weapons, a restriction on sales was warranted "because the matter is so related to the underlying indictment." Judge Virden thus orally granted the motion to the extent Crawford was authorized to sell the weapons provided the sales were through a FFL.

Later that day, Judge Virden issued an order memorializing her oral ruling. Doc. #32. Of relevance here, the order states

> As announced on the record today, Defendant is permitted to legally transfer his lawful ownership of firearms and knives, not heretofore seized by the government, pending the outcome of this criminal matter. Provided however, he must do so without taking possession of such weaponry, and he must use a federal firearm licensee(s) to accomplish such sale(s).

*Id*.

Approximately a month later, on December 4, 2018, Crawford was charged in a superseding indictment with two counts of selling firearms to a felon. Doc. #60.

On February 25, 2019, a petition was filed to revoke Crawford's pretrial release based on the allegation that between December 27 and December 30, 2018, Crawford possessed a firearm while hunting. Doc. #72. Judge Virden held a hearing on the petition on March 14, 2019. Doc. #80. After considering the testimony of witnesses (Crawford and Special Agent Dustin Blunt)[1] and the arguments of counsel, Judge Virden declined to revoke Crawford's release but ordered that Crawford's pretrial release conditions be

> modified to include the location restriction program of "home detention with a location monitor," which will restrict the defendant to his residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the pretrial services office or supervising officer.

Doc. #83.

On April 26, 2019, Carr was permitted to withdraw as Crawford's counsel based on an irreconcilable conflict between the two men. Doc. #110. Subsequently, on May 10, 2019, Robert Johnston and Arthur Calderon entered appearances as counsel on Crawford's behalf. Docs. #117, #120.

On June 9, 2021, a jury found Crawford guilty on both counts of the superseding indictment. In considering whether to allow Crawford to remain released pending his sentencing, this Court questioned Crawford regarding his sale of firearms. Crawford stated that "shortly after" Judge Virden's November 2, 2018, order, he sold through his wife a firearm to an "ex-family member." When asked why he did not use an FFL for such sale as directed by Judge Virden's

---

[1] Doc. #81.

order, Crawford stated that Carr had spoken with someone in probation and had come to an agreement where his wife could sell his firearms without using an FFL so long as she obtained certain forms and identification from the purchaser. After imposing additional conditions of release, the Court decided to allow Crawford to remain released on bond. However, the Court noted that it would review the transcript of the November 2 hearing and consult with Judge Virden to determine whether Crawford's sale of the firearm complied with Judge Virden's order.

The next day, a petition was filed to revoke Crawford's bond based on the alleged December 2018 firearm possession and the allegedly unauthorized transfer of a firearm. Doc. #229. At the bond revocation hearing held June 23, 2021,[2] this Court heard testimony from Crawford, his wife Debbie, Probation Officer Brandon McTeer, and Federal Bureau of Investigation Task Force Officer Travis Tribble. *See* Doc. #238. At the conclusion of the hearing, the Court took the issue of revocation under advisement. Doc. #236.

## II
## Hearing Evidence

The evidence introduced at the hearing established that on December 20, 2019, Debbie Crawford sold a Thompson Center Encore firearm to Christopher Hull, Jr., for $1,600.00. Doc. #240; *see also* Doc. #242. Hull is not an FFL. The sale to Hull was negotiated by Crawford, who also completed the bill of sale.

Both Crawford and his wife testified that the sale was made based on the advice of Carr, their counsel at the time. Specifically, Debbie testified that Carr had given her and Crawford "a legal document saying we could [sell without an FFL]." Debbie further testified that while she and Crawford were told they had to go through a licensed dealer, Carr told them they did not have

---
[2] Doc. #234.

to do so. As support for this contention, Debbie referred to a "Limited Power of Attorney" which she said Carr drafted, and which was executed by Crawford on November 7, 2018. Doc. #241. In the power of attorney, Crawford authorized Debbie "on [his] behalf" "[t]o buy and/or sell all firearms, guns, knives, firearm accessories, and hunting equipment that I may have in my possession." *Id*. at 1.

Crawford testified that he attended the November 2, 2018, hearing before Judge Virden and that "the Judge didn't rule on it while we were in Court." Further, according to Crawford, at the hearing, Samuel Stringfellow, one of the prosecuting attorneys in this case, "brought up the fact that if I gave the guns to Debbie that Debbie wouldn't be required to go through an FFL."

Beyond the evidence related to the gun sale, the government introduced evidence that (1) Louis West, the primary witness against Crawford at trial, told investigators that he was told Crawford had "put a hit" on him; (2) in February 2021, Crawford violated the location monitoring condition of his bond when he left his home without permission to go to a Walmart store; (3) William Body, who lived in a camper on land owned by Crawford, called the FBI hotline stating that Crawford threatened to kill him; and (4) in February 2019, Joey Reid told law enforcement officers that he heard a shot from the woods and then saw Crawford leave the woods.

Crawford, for his part, testified that (1) he never put a hit on West; (2) he went to Walmart to get certain essentials because of an ice storm but did not get permission to do so from his supervising probation officer; (3) he only told Body that he had to leave his property; and (4) since his arrest, he has never possessed a firearm, hunting or otherwise. Debbie testified that Crawford is in poor health and that he "can barely walk some mornings and some afternoons for that matter too." Both Debbie and Crawford testified to Crawford's strong ties to the Boyle, Mississippi, community.

# III
# Analysis

18 U.S.C. § 3143 governs the standards for release or detention of a defendant pending sentence or appeal. The statute provides that unless the relevant guidelines do not recommend a term of imprisonment, a convicted defendant must be detained "unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community." 18 U.S.C. § 3143(a).

When the relevant standards are met, § 3143(a) directs that a "judicial officer shall order the release of the person in accordance with [18 U.S.C. §] 3142(b) or (c)." 18 U.S.C. § 3148, in turn, governs revocations of release for persons "released under section 3142." Specifically, the statute provides that "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Pursuant to 18 U.S.C. § 3148(b):

> The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer--
>
> (1) finds that there is--
>   (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or
>   (B) clear and convincing evidence that the person has violated any other condition of release; and
>
> (2) finds that--
>   (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>   (B) the person is unlikely to abide by any condition or combination of conditions of release.
>
> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

The Fifth Circuit, citing *United States v. Gotti*, 794 F.2d 773 (2d Cir. 1986), has held under § 3148 "that a district court's finding that a defendant will not abide by any conditions of release may be established by a preponderance of the evidence." *United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990). This Court has not found a Fifth Circuit case concerning the proper standard for assessing danger under § 3148(b)(2)(A). However, *Gotti*, the Second Circuit case on which the Fifth Circuit relied for assessing the standard under § 3148(b)(2)(B)'s compliance provision, held that the preponderance standard governed both § 3148(b)(2) inquiries. *Gotti*, 794 F.32d at 778. Accordingly, the Court concludes that the preponderance standard ordinarily should govern the dangerousness inquiry under § 3148(b)(2)(A). However, this is not the standard that should govern here.

Both *Aron* and *Gotti* addressed revocation proceedings for defendants not yet convicted. And release of defendants pending trial is governed by § 3142, which, unlike § 3148, does not condition release on a clear and convincing showing that the person is not likely to flee or pose a danger to the safety of any other person or the community. Rather, § 3142(f)(2)(B) requires that "[t]he facts the judicial officer uses to support a finding … that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence."

The Court sees no reason to place a lower standard of release upon a convicted defendant who has violated a condition of his release than there is on a defendant who has not been convicted or committed such a violation. Accordingly, the Court concludes that where evidence supports a finding that a defendant awaiting sentencing has violated a condition of his release, that defendant must establish by clear and convincing evidence he is not likely to flee or pose a danger to the safety of another person or the community. *See United States v. Mohamed*, No. 09-352, 2012 WL

5279184, at *4 (D. Minn. Oct. 25, 2012) ("[T]he Court finds that the Defendant has violated a condition of his release pending sentencing, and that the Defendant has failed to establish that there exists a condition or combination of conditions that will assure the Court that the Defendant does not pose a danger to the safety of another person or the community."); *United States v. Koerber*, No. 2:17-cr-37, 2019 WL 3937024, at *3 (D. Utah Aug. 20, 2019) (where evidence established violation of condition of release, defendant pending sentencing had burden of showing by clear and convincing evidence that he was not a danger to the community).

Here, the evidence clearly establishes that Crawford violated a condition of his release. Compliance with court orders was a condition of his secured bond, which itself was a condition of his release. *See* Docs. #8, #12. Insofar as Hull, the firearm purchaser, was not an FFL, this condition was clearly violated. The only question then is whether Crawford has established by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of another person or the community.

In arguing that he is unlikely to flee, Crawford claimed that he is in poor health and has strong ties to his community. In arguing that he poses no danger, Crawford offered his generally good compliance with conditions while on release. He further argues that the improper gun sale should not weigh against him because he believed he was complying with the law based on Carr's advice. Because this Court ultimately concludes that Crawford has failed to show a lack of dangerousness by clear and convincing evidence, the issue of whether he satisfied his burden regarding the likelihood of flight need not be reached.

With respect to dangerousness, both § 3142 and § 3148 direct a court to consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g); 18 U.S.C. § 3148(b)(2)(A) (incorporating § 3142(g) factors).

First, both Crawford's underlying conviction and the basis for this petition involve the improper transfer of firearms, conduct which poses a significant threat to the community. Though Crawford essentially argues that the nature of the transfer to Hull does not support a finding of dangerousness because he believed he was following the law based on Carr's advice, the Court rejects this argument as incredible.

While the fact that Crawford disclosed the sale to the Court is somewhat suggestive of his belief in its legality, this belief is severely undercut by Crawford's misstatement of facts associated with the disclosed sale. For one, Crawford stated the sale occurred soon after Judge Virden issued her order when in fact the sale occurred more than a year later. And as noted above, Crawford testified that Judge Virden did not rule on the motion to sell at the November 2 hearing when in fact she did. Furthermore, both Crawford and Debbie attended the November 2 hearing when Judge Virden rejected Carr's suggestion that Debbie simply be allowed to sell the firearms on Crawford's behalf. Even crediting Crawford's dubious assertion that he never saw Judge Virden's order memorializing her oral ruling, Crawford (and Debbie) indisputably were present in the

courtroom when Judge Virden stated unambiguously (after Carr suggested that Debbie simply sell the weapons) that any sale had to be through an FFL. Moreover, there is nothing in the power of attorney, which merely authorizes Debbie to sell firearms on behalf of Crawford (but did not transfer ownership of the firearms to Debbie), that would indicate any sale could proceed without an FFL.

Given Crawford's presence at the hearing and Judge Virden's unambiguous oral ruling, as well as the misstatements in Crawford's testimony, it is simply incredible that Crawford could believe that he was following the law by selling a firearm through Debbie without using an FFL. That Crawford willingly violated a court order regarding the sale of firearms, particularly while under indictment for the crime of unlawfully selling firearms, is strong evidence that his continued release would pose a danger to the community.

Second, the evidence supporting the crimes charged against Crawford was substantial, resulting in a conviction on both counts. And the evidence supporting the improper transfer to Hull is undisputed.

Third, while there was no evidence offered at the hearing indicating that Crawford has a history of drug use or prior criminal conduct, he violated the unambiguous language of Judge Virden's November 2 order while he was released under bond and specified conditions. He also, on at least one occasion, violated his location monitoring condition. Under these circumstances, the third factor neither weighs against nor in favor of a finding of dangerousness.

Fourth, given the substantial number of firearms Crawford owns (even if he has no immediate access to them),[3] the Court finds the threat to persons and the community to be serious.

---

[3] Based on the list of firearms Crawford submitted to the Court, Crawford owns approximately 330 firearms, *see* Doc. #243, independent of those seized in this case. According to Debbie, these firearms are simply kept in an upstairs room in the home of a friend.

*See United States v. Holcomb*, No. 16-cr-1408, 2017 WL2226590, at *4 (S.D. Cal. May 22, 2017) (when defendant charged with firearm crime has possession of firearms, fourth factor weighs in favor of danger).

For all these reasons, as well as Crawford's lack of candor in his representations to the Court, the Court concludes that Crawford has failed to establish that he would not pose a danger to persons or the community. *See United States v. Etuk*, No. 20-cr-100, 2021 WL 653026, at *5 (N.D. Okla. Feb. 19, 2021) ("Given Mr. Etuk's disregard for the conditions placed on his previous release, and his lack of candor in dealing with his business partners, his probation officer, and the Court, the Court finds that Mr. Etuk is unlikely to abide by any condition or combination of conditions of release the Court might impose."). It follows, therefore, that his release under his bond must be revoked.[4]

## IV
## Conclusion

The petition [229] for revocation is **GRANTED**.

**SO ORDERED**, this 25th day of June, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[4] Having reached this conclusion, the Court need not resolve any credibility issues with respect to the remaining allegations against Crawford.