IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

UNITED STATES OF AMERICA

V.  NO. 4:18-CR-104

JOE CRAWFORD

**ORDER**

On December 4, 2018, Joe Crawford was charged in a superseding indictment with two counts of selling firearms to a felon. Doc. #60. On June 9, 2021, following a three-day jury trial, Crawford was convicted on both counts of the superseding indictment. Doc. #226. After being granted a requested extension to file a post-judgment motion, Crawford filed a motion for acquittal or, alternatively, a new trial on July 1, 2021. Doc. #248. The government timely responded to the motion. Doc. #254. Crawford did not reply. Because this Court concludes that Crawford's motion is without merit, acquittal and a new trial will be denied.

**I
Standards**

Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." "Evidence is sufficient to support a conviction so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gas Pipe, Inc.*, 997 F.3d 231, 240 (5th Cir. 2021) (quotation marks omitted). In applying this standard, "the court views all evidence, whether circumstantial or direct, in the light most favorable to the government, with all reasonable inferences and credibility choices to be made in support of the jury's verdict." *Id.* (cleaned up).

Motions for new trials are governed by Federal Rule of Criminal Procedure 33(a), which provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." "[A]ny error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004).

## II
## Trial Evidence

Prior to trial, Crawford and the government stipulated to the following facts:

> Louis West, prior to March 20, 2018, had been previously convicted of a felony offense. Specifically, he has felony convictions for (1) burglary, 1990 (2) hindering apprehension of a fugitive and fleeing a police officer, 2003, and (3) possession with intent to distribute cocaine and reckless use of a firearm/prohibited possession of a firearm, 2008.
> ….
> The pistols and rifles sold by the defendant on March 20, 2018, i.e. the Desert Eagle, .44 caliber pistol, the Beretta, .40 caliber pistol, Federal Arms Corp. .308 caliber rifle, and the Nodak Spud LLC 5.45x39mm caliber rifle, all meet the definition of "firearm" as enumerated in Title 18 United States Code § 921(a)(3).
> ….
> The pistols and rifles sold by the defendant on June 14, 2018, i.e. the two Glock, .45 caliber pistols, the Beretta.32 caliber pistol, Taurus .40 caliber pistol, the Nodak Spud LLC 5.45x39 mm caliber rifle, and the Norinco 7.62x39mm caliber rifle, all meet the definition of "firearm" as enumerated in Title 18 United States Code § 921(a)(3).

Doc. #221 (paragraph numbering omitted).

At trial, the government introduced audio and visual recordings of interactions between Crawford and Louis West, a confidential informant ("CI") for the government. *See* Doc. #224. West, Travis Tribble (an officer with the Cleveland Police Department), Dustin Blount (a special agent with the Federal Bureau of Investigation), and Jason Price (an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives) all testified. *See* Doc. #223. Crawford testified on his own behalf. *Id*. In the light most favorable to the government, this evidence shows:

In 2015 or 2016, West approached Tribble with the goal of becoming a confidential

2

informant in order to "get the people that killed his son." Doc. #252 at 170. At the time, Tribble did not have the "means to let [West] work." *Id*. Sometime later, West was arrested for possession of a firearm by a convicted felon. *Id*. In December of 2017, West began working with Tribble as a CI making controlled buys. *Id*. at 171. In return for his work as a CI, West was paid and also "worked … off" his charges. *Id*.

In early 2018, West informed Tribble that Leon Hughes, another convicted felon, "had a subject that was wanting to sell him a firearm." *Id*. at 172. West arranged a controlled buy on February 17, 2018, at Wild Bill's in Boyle, Mississippi. *Id*. at 172–73, 175. During the buy, Hughes purchased the firearms from Crawford and gave them to West, who was also present. *Id*. at 176–77.

On March 1, 2018, West made a controlled buy of two firearms from Crawford, again at Wild Bill's. *Id*. at 178. This buy was also arranged through Hughes. *Id*.

On March 10, 2018, West called Crawford to arrange another buy. During the call, West said he wanted to purchase a fully automatic weapon and some handguns, including a .44 magnum and a Desert Eagle. West and Crawford also had the following exchange:

| | |
|---|---|
| Crawford: | Well, but I mean I can get them right now because sons of bitches want to, soon as that law goes into effect, that they, they're trying to outlaw all of that shit man. Bump stocks already been outlawed. |
| West: | So what they, what you mean they're banning stuff? I mean I'm a felon so I don't know. |
| Crawford: | I know. |
| West: | I mean, you done bonded me, you done bailed me out. You don't even remember it do you cuz? |
| Crawford: | They, they's banning those bump stocks all together. I mean, soon as that damn school shooting come up they started talking about well we gonna ban the bump stocks. And they done wrote that into legislation, and they trying to get it passed right now. |
| … | |
| West: | Well, I'm a felon so I don't know. You know what I'm saying? |
| Crawford: | Yea Well, Ummm. |
| West: | I got about 4 felonies, shit. |

3

| | |
|---|---|
| Crawford: | Yea, let me see what the man's got up in there, see if they can hook that up. |
| West: | Yea, I mean shit, I mean shit. I just want some nice stuff man. |

Gov't Exs. 3, 3a.

On March 19, West called Crawford again. West told Crawford he wanted "AK's and shit like that, or something automatic." The conversation included the following exchange:

| | |
|---|---|
| West: | Let me, let me explain something to you first of all. Who am I? You bailed me out a million times man. One time before, you know what I'm saying? I'm a felony man, you ain't gotta worry I got 90,000 of them bitches. I just got out of prison. So, on my momma I got 9,000 of them bitches. So you ain't gotta, that's why I was just trying to peep you and put you on that. That's it. So far as that, I need what I asked you. But if you got some .44s I take them too, and some .45's. |
| Crawford: | I got some .45's now. |
| West: | Aight I'll take them. |

Gov't Exs. 4, 4a.

On March 20, 2018, West purchased from Crawford a Desert Eagle, .44 caliber pistol, Beretta, .40 caliber pistol, Federal Arms Corp. .308 caliber rifle, and Nodak Spud LLC 5.45x39mm caliber rifle. Doc. #221 at PageID 988. The sale occurred again at Wild Bill's. Doc. #252 at 186–87. During the sale, West asked to see one of the weapons. Gov't Exs. 7, 7a. Crawford and West then had the following exchange:

| | |
|---|---|
| Crawford: | It's in that case. Let me, let me pull around somewhere else and |
| West: | Yeah pull around, let me pull my car around, I ain't going to put my shit in the car around here, so I'll pull around |
| Crawford: | I don't go around back, they got cameras around back |
| West: | They ain't got cameras around back, that's why I say why you be pulling around there man. That's where the opening is |
| Crawford: | Oh, are you talking about on the end right here? They ain't got no … |
| West: | Yeah, yeah why don't you just want to go down man some man, you be too close to the end. That's what I was saying last time, why y'all didn't go around that way or somewhere. Y'all right where, …. Not that close. Go around some. |

Gov't Exs. 7, 7a.

4

On June 13, 2018, West called Crawford to arrange another gun purchase. Gov't Exs. 8, 8a. The two discussed specific firearms and arranged to meet the next day at Wild Bill's. *Id*. However, after arriving at Wild Bill's, West and Crawford drove to a "secluded road" near Crawford's home. Doc. #252 at 282. During the sale, West and Crawford discussed the types of firearms being sold and also had the following exchange:

| | |
|---|---|
| West: | I know the easiest damn thing to get, because I ain't gonna tell you no lie. I went to get Kyle. I went to Kyle pawnshop. I knew he wasn't gonna let me get it now. But this when I first got here. I went to Kyle, got out of prison. I got. I came down. I was trying to go to Kyle Pawnshop. I talk to him. I got … Willie been knowing me my whole life. Since I was a little boy. So I said, "Willie man, talk to Kyle man. See if I can buy one of those. Know what I'm saying?" Cause I wanted this special, uh, it's like this. Brown handle. |
| Crawford: | Mhmm |
| West: | But it's a special made, uh choppa that's in there, in that pawnshop that I really wanted out of there. Its brown handle. It's about, it's real short-like. |
| Crawford: | Yeah |
| West: | But that motherfucker so raw man. You ain't seen it but that motherfucker rough |
| Crawford: | Yeah, I see them up there all the time. I know bud- one of my buddies got one them |
| West: | That brown one I'm talking about. It's short. |
| Crawford: | He's got a key hanging round that motherfucker. I said, what that key there for? He said, cause when I got this motherfucker I got the key to the city. |
| West: | On my momma, that motherfucker. Yeah, you ain't seen it that motherfucker look- |
| Crawford: | Yeah, it's bad. |
| West: | I wanted that bitch, man. Kyle said he couldn't do it, man. |
| Crawford: | Well see he can't. A gun that he's got in the store he can't sell to ya, because it's registered through the store. |
| West: | But I want, but I shit. Shit, goddamn man. |
| Crawford: | He can't do it. See, if he [unintelligible] |
| West: | I got you though. I got the money though. |
| Crawford: | It don't matter about the money. You could pay three times as much, and he can't sell it to you because he'll lose his license. Can't sell a gun like that. |
| West: | So there's no way he can give me that gun? |
| Crawford: | Nuh uh. |
| West: | I need. I want that gun. |

5

| | |
|---|---|
| Crawford: | Somebody else can buy the gun. |
| West: | I tried that but nobody, don't really, ain't straight the one I'm fucking with, they all felonies. |
| Crawford: | But you know, I mean… |
| West: | Man, I'm in the hood. |
| Crawford: | You gotta get somebody that ain't a felon and get them to buy the motherfucker or wait and I'll get you one through |
| West: | That brown one |
| Crawford: | I'll get you one through one of the gun shows where I can buy it without having to do all the paperwork on it, or else I find somebody's that's got one and buy one. And then I'll put that motherfucker up and won't let it go nowhere until I see ya. |

Gov't Exs. 10, 10b. The "Kyle" referenced in the above exchange is Kyle Hallford, the son of the owner of Krossroads Pawnshop in Cleveland, Mississippi. Doc. #252 at 373–74. He is a convicted felon. *Id*. at 374.

Ultimately, on June 14, 2018, West purchased from Crawford two Glock, .45 caliber pistols, a Beretta .32 caliber pistol, a Taurus .40 caliber pistol, a Nodak Spud LLC 5.45x39 mm caliber rifle, and a Norinco 7.62x39mm caliber rifle. Doc. #221 at PageID 988.

All told, West paid $4,850 for all the firearms he purchased from Crawford, which was more than fair market value. Doc. #252 at 286.

Crawford, for his part, testified that he did not believe West was a felon because nobody could have as many felonies as West claimed, he had never bonded West out of jail, and West did not appear to know anything about firearms. Doc. #252 at 357, 362–64. Crawford further testified that he told West he could not purchase a firearm from Kyle because Kyle was a convicted felon. *Id*. at 374.

### III
### Motion for Acquittal

Crawford challenges the sufficiency of the evidence supporting his convictions. These convictions were on both counts of the superseding indictment, which charged:

6

### COUNT ONE

On or about March 20, 2018, in the Northern District of Mississippi, the defendant, JOE CRAWFORD, did knowingly sell firearms, that is, a Magnum Research Inc., Desert Eagle, .44 caliber pistol, a Beretta .40 caliber pistol, a Federal Arms Corp. FA91 .308 caliber rifle, and a Nodak Spud LLC 5.45x39 mm caliber rifle, to a person knowing and having reasonable cause to believe that said person had been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Sections 922(d) and 924(a)(2).

### COUNT TWO

On or about June 14, 2018, in the Northern District of Mississippi, the defendant, JOE CRAWFORD, did knowingly sell firearms, namely: a Norinco model MAK-90 Sporter 7.62x39mm caliber rifle, a Nodak Spud LLC 5.45x39mm caliber rifle, two Glock .45 caliber pistols, a Taurus .40 caliber pistol, a Berretta .32 caliber pistol, and a "bump stock," to a person knowing and having reasonable cause to believe that said person had been convicted of a crime punishable by imprisonment for a term exceeding one year, all in violation of Title 18, United States Code, Sections 922(d) and 924(a)(2).

Doc. #60.

18 U.S.C. § 922(d), the relevant statutory provision, provides that it "shall be unlawful for any person to sell … any firearm or ammunition to any person knowing or having reasonable cause to believe that such person … has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." Pursuant to 18 U.S.C. § 921, the definitions section of the statute:

> The term "crime punishable by imprisonment for a term exceeding one year" does not include—
>
> (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or
> (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.
>
> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of

this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

In seeking acquittal, Crawford argues that, notwithstanding § 922(d)'s reference to "reasonable cause to believe," the government was required to prove that Crawford had "actual knowledge" that West had been convicted of a "crime punishable by imprisonment for a term exceeding one year" and that it did not do so at trial. Doc. #249 at 9–10. He further contends that even if the government was not required to prove actual knowledge, acquittal is required because the government failed to introduce evidence sufficient to establish that Crawford had reasonable cause to believe that none of the § 921(a)(20) exclusions applied to West's convictions. *Id*. at 13.

### A. Actual Knowledge

Crawford first argues that pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the government "must prove—beyond a reasonable doubt—that Crawford had *actual knowledge* as to West's status." Doc. #249 at 9. Crawford is incorrect.

The sole issue in *Rehaif*, a felon in possession case, was whether "in prosecutions under § 922(g) and § 924(a)(2), the Government must prove that a defendant knows of his status as a person barred from possessing a firearm." 139 S. Ct. at 2195. Section 922(g), the provision at issue, provides that "[i]t shall be unlawful" for certain classes of persons to possess a firearm "in or affecting" interstate commerce. Section 924(a)(2), the relevant penalty provision, provides "[w]hoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

The United States Supreme Court recognized "a presumption that criminal statutes require the degree of knowledge sufficient to make a person legally responsible for the consequences of

8

his or her act or omission." 139 S. Ct. at 2195 (cleaned up). The Supreme Court then held that "[t]he term 'knowingly' in § 924(a)(2) modifies the verb 'violates' and its direct object, which in this case is § 922(g)." *Id*. Accordingly, the issue was "what it means for a defendant to know that he has 'violate[d]' § 922(g)." *Id*. To answer this question, the Supreme Court observed:

> § 922(g) makes possession of a firearm or ammunition unlawful when the following elements are satisfied: (1) a status element (in this case, "being an alien ... illegally or unlawfully in the United States"); (2) a possession element (to "possess"); (3) a jurisdictional element ("in or affecting commerce"); and (4) a firearm element (a "firearm or ammunition").

*Id*. at 2195–96.

Setting aside the jurisdictional element, which was not at issue, the *Rehaif* court held that "[a]s a matter of ordinary English grammar, we normally read the statutory term 'knowingly' as applying to all the subsequently listed elements of the crime." *Id*. at 2196 (quotation marks omitted). Because *Rehaif* was "not a case where the modifier 'knowingly' introduces a long statutory phrase, such that questions may reasonably arise about how far into the statute the modifier extends," the Supreme Court held that "Congress intended to require the Government to establish that the defendant knew he violated the material elements of § 922(g)." *Id*. The Supreme Court noted that this conclusion was consistent with the policy that scienter requirements should ordinarily be included in criminal statutes. *Id*. at 2196–97.

In light of the above, applying the *Rehaif* analysis to § 922(d) does not require an actual knowledge requirement as to the status of the purchaser. To be sure, § 924(a)(2), the penalty provision under which Crawford (like Rehaif) has been charged, includes a knowledge requirement which modifies the term "violates" and its object—in this case § 922(d). Thus, consistent with *Rehaif*, this Court must determine how far the modification extends into the elements of a § 922(d) violation.

9

By its express terms, § 922(d) contains two elements: a sale or disposal element ("sell or otherwise dispose of any firearm or ammunition to any person") and, like § 922(g), a status element (that the recipient of the firearm fell into a prohibited class). However, unlike § 922(g), § 922(d) contains an express scienter requirement in its status element, specifically that the defendant "know[] or hav[e] reasonable cause to believe" that the recipient of the firearm fell into a prohibited class. Thus, unlike *Rehaif*, the extension of the knowing modifier to this element, which includes a specific scienter requirement, would be inappropriate. *See generally Staples v. United States*, 511 U.S. 600, 606 (1994) (presumptions favoring mens rea inapplicable when contrary to "congressional intent, express or implied"). Thus, while § 924(a)(2)'s knowing requirement extends to the first element of § 922(d)—the sale or disposal element—it does not reach the status element.

This conclusion regarding the interplay of § 924(a)(2) and § 922(d) is confirmed by Justice Samuel Alito's dissent in *Rehaif*. Specifically, Justice Alito noted that under § 922(d), "[i]t is enough if the seller had 'reasonable cause' to know that a purchaser fell into a prohibited category" and that applying the majority's approach would produce a situation where "an individual who may fall into one of the § 922(g) categories [would] have less obligation to verify his own situation than does the person who sells him a gun." *Rehaif*, 139 S. Ct. at 2209 (Alito, J., dissenting).

In sum, Crawford has offered no reason for this Court to depart from the express scienter requirement of § 922(d). Accordingly, his argument that the government was required to show that he had actual knowledge of West's felon status is rejected.

But even if an actual knowledge standard applied, the evidence would have supported a conviction. As noted above, when speaking about Kyle's alleged refusal to sell West a firearm, Crawford stated, "You gotta get somebody that ain't a felon and get them to buy the motherfucker

10

or wait and I'll get you one through." From this evidence, a reasonable jury could conclude that Crawford had actual knowledge that West was a felon who could not purchase a firearm.

### B. Sufficiency of the Evidence

Crawford next argues that even if the actual knowledge requirement does not apply, the evidence was insufficient to support his conviction because West only said he was a felon, and Crawford had no reason to believe that West's felonies did not fall under the § 921(a)(20) exclusions. Doc. #249 at 11. However, courts have rejected the argument that a purchaser's statement that he is a felon is insufficient to support the reasonable cause element of a conviction under § 922(d). *See, e.g.*, *United States v. McConnel*, 464 F.3d 1152, 1160 (10th Cir. 2006); *United States v. Bokman*, 215 F. App'x 203, 205 (4th Cir. 2007); *United States v. Alexander*, 834 F. App'x 312, 318 (9th Cir. 2020). This Court joins these authorities and holds that West's repeated references to his general status as a felon were sufficient to support a conviction under § 922(d)(1).

Even if a statement that a purchaser is a felon was insufficient on its own, as mentioned above, there was other evidence, most notably Crawford's statement that West needed someone who was not a felon to purchase a gun for him, that Crawford knew West was unable to purchase a firearm due to his felon status.

## IV
## Motion for New Trial

At the close of evidence, the Court instructed the jury on the necessary elements of a § 922(d) conviction. The instruction, labeled C-1, stated:

> Title 18, United States Code, Sections 922(d) and 924(a)(2), make it a crime for a person knowingly to sell or otherwise dispose of a firearm to a convicted felon when the seller knows or has reasonable cause to believe that such a person is a convicted felon.
>
> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

11

> First: That the defendant knowingly sold a firearm to Louis West;
>
> Second: That at the time of the sale to Louis West, West was a convicted felon; and
>
> Third: That at the time of the sale, the defendant knew or had reasonable cause to believe that Louis West was a convicted felon.
>
> The term "firearm" means any weapon that will, or is designed to, or may readily be converted to, expel a projectile by the action of an explosive. The term "firearm" also includes the frame or receiver of any such weapon, or any firearm muffler or firearm silencer, or destructive device.
>
> To have "reasonable cause to believe" that Louis West was a convicted felon means to have knowledge of facts which, although not amounting to direct knowledge, would cause a reasonable person, knowing the same things, to reasonably conclude that Louis West was a convicted felon.

Doc. #225 at PageID 1001.

Crawford argues this instruction was error because it used the term "convicted felon" rather than the statutory phrase person convicted "of a crime punishable by imprisonment for a term exceeding one year" as limited by the exclusions set forth in § 921(a)(20). Doc. #249 at 14–15.

While it appears the Fifth Circuit has not expressly addressed the necessity of including the § 921(a)(20) exclusions in a § 922(d) prosecution, it has held that because "the definition under § 921(a)(20) of the phrase 'crime punishable by imprisonment for a term in excess of one year,' is not an element of a violation of § 922(g)(1)," there is no error in omitting the exclusionary language from a jury instruction. *United States v. Broadnax*, 601 F.3d 336, 347 (5th Cir. 2010). Consistent with this holding, the Fourth Circuit has held that while the exclusions in § 921(a)(20) are not incorporated as an element of a § 922(d) conviction so as to automatically require an instruction, a defendant may be entitled to an instruction on the exclusions when there is evidence supporting the applicability of the exclusions adduced at trial. *United States v. Parker*, 262 F.3d 415, 424 (4th Cir. 2001).

12

Here, Crawford adduced no evidence which would have supported the inclusion of the exclusions in an instruction. There is nothing in the record which would have suggested that Crawford had reason to believe that any of the exclusions applied, that Crawford considered the applicability of the exclusions in selling the firearms, or that Crawford was even aware of the exclusions. Under these circumstances, there was no error in omitting the exclusions from C-1.

## V
## Conclusion

For all the reasons above, Crawford's motion for acquittal or, alternatively, a new trial [248] is **DENIED**.

**SO ORDERED**, this 23rd day of July, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**